**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CLAUDIA SAMPEDRO, DESSIE PILEK a/k/a DESSIE MITCHESON, IRINA VORONINA, JANET GUZMAN, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE,<br><br>Plaintiffs,<br><br>vs.<br><br>CLUB CONTINENTAL, INC. d/b/a LATIN BLISS,<br><br>Defendant. | Case No. 1:26-cv-12975<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiffs CLAUDIA SAMPEDRO, DESSIE PILEK a/k/a DESSIE MITCHESON, IRINA VORONINA, JANET GUZMAN, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE, (collectively, "Plaintiffs"), file this Complaint against CLUB CONTINENTAL, INC., d/b/a LATIN BLISS ("Defendant") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote its night club, LATIN BLISS located at 5515 N Lincoln Ave, Chicago, Illinois 60625 (**hereinafter referred to as the "Night Club" or "Latin Bliss"**).

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 et seq. Right to Publicity, as to Plaintiffs Guzman and

Rao; d) Illinois Common-Law False Light, as to Plaintiffs Guzman and Rao; and e) Negligence and Respondeat Superior.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. Defendant Club Continental, Inc. is an Illinois corporation that operates Latin Bliss and maintains its registered office at 5515 N. Lincoln Avenue, Chicago, Illinois 60625.

8. Venue is proper in the United States District Court for the Northern District of Illinois because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Chicago, Illinois (Cook County).

9. A significant portion of the alleged causes of action arose and accrued in Chicago, Illinois and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Chicago, Illinois.

## PARTIES

***Plaintiffs***

10. Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

11. Plaintiff Dessie Pilek a/k/a Dessie Mitcheson ("Pilek") is a well-known professional model, and a resident of Orange County, California.

12. Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a

resident of Los Angeles County, California.

13. Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

14. Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

15. Plaintiff Yodit Yemane a/k/a Jodie Joe ("Yemane") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendant***

16. Defendant, Club Continental, Inc., is a corporation formed under the laws of the state of Illinois and registered to conduct business in Illinois. During times relevant to this action, Club Continental, Inc. operated Latin Bliss.

17. Service of process may be perfected upon Defendant Club Continental, Inc. by serving the registered agent for service of process, Saqib Razzaq, who can be located at 5515 N Lincoln Ave, Chicago, IL 60625.

## FACTUAL ALLEGATIONS

18. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

19. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

20. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

21. In the case of each Plaintiff, this apparent claim was false.

22. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

23. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

24. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

25. Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).[1]

26. Upon information and belief, Sampedro is depicted in the photo in Exhibit "A" to promote Latin Bliss on its Facebook page. This Image was intentionally altered to make it appear that Sampedro was either an employee working at Latin Bliss, that she endorsed Latin Bliss, or that she was otherwise associated or affiliated with Latin Bliss.

27. Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

will continue to suffer, damages as a result of same.

28. Pilek competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Pilek entered Maxim magazine's annual "Hometown Hottie" contest among thousands of models and was crowned Maxim's "Hometown Hottie." Later that year, she was ranked #100 on Maxim's "Hot 100" list. She has graced the pages of multiple issues of Maxim, including a three-page spread, two centerfolds, and the cover of the May 2014 "Navy" issue. Pilek was recently featured as the main Tecate Beer ring girl in the Mayweather vs. Pacquiao fight, the biggest Pay-per-View event in history, which gave her worldwide visibility with over 100 million viewers. This exposure triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Pilek currently has 367,000 Instagram followers, over 22,000 Facebook followers, and 11,500 X (formerly known as Twitter) followers.

29. Upon information and belief, Pilek is depicted in the photo in Exhibit "B" to promote Latin Bliss on its Facebook page. This Image was intentionally altered to make it appear that Pilek was either an employee working at Latin Bliss, that she endorsed Latin Bliss, or that she was otherwise associated or affiliated with Latin Bliss.

30. Pilek has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31. Voronina is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max, Ocean, Shape, 944, Knockout, Q, People, Kandy, Rukus, Vape and Browz magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month

PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands. In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers.

32. Upon information and belief, Voronina is depicted in the photo in Exhibit "C" to promote Latin Bliss on its Facebook page. This Image was intentionally altered to make it appear that Voronina was either an employee working at Latin Bliss, that she endorsed Latin Bliss, or that she was otherwise associated or affiliated with Latin Bliss.

33. Voronina has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34. Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning

over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

35. Upon information and belief, Guzman is depicted in the photo in Exhibit "D" to promote Latin Bliss on its Facebook page. This Image was intentionally altered to make it appear that Guzman was either an employee working at Latin Bliss, that she endorsed Latin Bliss, or that she was otherwise associated or affiliated with Latin Bliss.

36. Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37. Rao who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

38. Upon information and belief, Rao is depicted in the photo in Exhibit "E" to promote Latin Bliss on its Facebook page. This Image was intentionally altered to make it appear that Rao was either an employee working at Latin Bliss, that she endorsed Latin Bliss, or that she was otherwise associated or affiliated with Latin Bliss.

39. Rao has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40. Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean

descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry

41. Upon information and belief, Yemane is depicted in the photo in Exhibit "F" to promote Latin Bliss on its Facebook page. This Image was intentionally altered to make it appear that Yemane was either an employee working at Latin Bliss, that she endorsed Latin Bliss, or that she was otherwise associated or affiliated with Latin Bliss.

42. Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

43. Defendant operates a Night Club, where it is engaged in the business of selling alcohol and food in a sexually charged atmosphere.

44. Defendant owns, operates, and controls Latin Bliss's social media accounts, including its Facebook, Twitter, and Instagram accounts.

45. Defendant used Latin Bliss's Facebook, Twitter, and Instagram accounts to promote Latin Bliss, and to attract patrons.

46. Defendant did this for its own commercial and financial benefit.

47. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Latin Bliss, endorsed Latin Bliss, or was otherwise associated or affiliated with Latin Bliss.

48. Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Latin Bliss to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising,

marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

49. Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Latin Bliss, and at no point have any of the Plaintiffs ever endorsed Latin Bliss or otherwise been affiliated or associated with Latin Bliss.

50. All of Defendant's activities, including its misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

51. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

52. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

53. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

54. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

55. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

56. Defendant was aware that, by using Plaintiffs' Images, it was violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Latin Bliss.

57. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

58. In addition, Plaintiffs allege that the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Latin Bliss.

59. At no point was any Plaintiff ever contacted by Defendant, or any representative of Defendant, to request the use of any of Plaintiffs' Images.

60. Defendant never obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

61. Defendant never paid any Plaintiff for its use of her Images on any promotional materials, including Latin Bliss's website, Twitter, Facebook, or Instagram accounts.

62. Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

63. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

64. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

65. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

66. Thus, this was done in furtherance of Defendant's commercial benefit.

67. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact

demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

68. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

69. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant's consumers' minds, which led to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote its business enterprise, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness.

70. Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

71. Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, it used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

72. Defendant knew that its use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

73. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

74. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

75. Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

76. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

77. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

78. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

79. Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

80. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

81. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

82. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

83. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

84. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and its activities and attracting clientele to Defendant's establishment.

85. Defendant knew or should have known that its unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

86. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

87. Defendant's wrongful conduct as described herein was willful.

88. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

89. Defendant had actual or constructive knowledge of the wrongfulness of its conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

90. The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

91. Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

92. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)**

93. Plaintiffs Guzman and Rao re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

94. Plaintiffs Guzman and Rao have a right of publicity under the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 et seq. Right to Publicity.

95. Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Plaintiffs Guzman and Rao without express written or oral consent to such use.

96. As set forth herein, Defendant has violated Plaintiffs Guzman and Rao's right to publicity by invading Plaintiffs Guzman and Rao's privacy, misappropriating their image and

likeness, and publishing the same on Defendant's social media outlets as they appear in the attached exhibits (see supra) which made it appear as though Plaintiffs Guzman and Rao were employed or endorsed Defendant's business and/or events, or activities.

97. Defendant's unauthorized use of Plaintiffs Guzman and Rao's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendant; further, the manner in which Defendant used the subject image was ongoing and continuous in that any person visiting Plaintiffs Guzman and Rao's social media accounts could view, access, and even download the image from the date it was first posted until present. Moreover, Defendant's manner of posting Plaintiffs Guzman and Rao's images was done so in a manner that was inherently indiscoverable or difficult to discover given the nature of the social media accounts used: Plaintiffs Guzman and Rao's images get pushed down over time.

98. Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Plaintiffs Guzman and Rao's image, likeness and/or identity on its social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Defendant's events and activities.

99. Defendant's social media outlets were designed to attract business and generate revenue and upon information and belief, Defendant's use of Plaintiffs Guzman and Rao's image, likeness and/or identity did in fact attract clientele and generate business for Defendant.

100. At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Plaintiffs Guzman and Rao's image, likeness and/or identity on its social media outlets or for any other use or matter associated with Defendant.

101. Defendant took these actions without Plaintiffs Guzman and Rao's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Plaintiffs Guzman and Rao's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, or its events or activities or for any other use.

102. Plaintiffs Guzman and Rao never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of their image, likeness and/or identity to advertise, promote, market or endorse Defendant.

103. Defendant was at all relevant times aware that it never received Plaintiffs Guzman and Rao's permission or consent to use their Image on any website or social media account, or on any other medium, in order to promote Defendant's business.

104. At no point did Defendant ever compensate Plaintiffs Guzman and Rao for its use of their image, likeness, and/or identity.

105. No applicable privilege or authorization exists for Defendant's use of Plaintiffs Guzman and Rao's image and likeness.

106. Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Plaintiffs Guzman and Rao's image, likeness or identity without their express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

107. Defendant caused irreparable harm to Plaintiffs Guzman and Rao, their reputation and brand by attributing to Plaintiffs Guzman and Rao the night club lifestyle and activities at its establishment.

108. Defendant has also damaged Plaintiffs Guzman and Rao as a direct and proximate result of its unauthorized use of Plaintiffs Guzman and Rao's image, likeness and/or identity without compensating Plaintiffs Guzman and Rao.

109. Due to Defendant's violation of Plaintiffs Guzman and Rao's rights of privacy and publicity under IRPA, Plaintiffs Guzman and Rao have been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

110. In addition, Plaintiffs Guzman and Rao hereby request an Order permanently enjoining Defendant from violating Plaintiffs Guzman and Rao's right to privacy and publicity.

111. In addition, Plaintiffs Guzman and Rao hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendant's knowing and intentional violation of their statutory rights to privacy and publicity.

112.

113.

**FOURTH CAUSE OF ACTION**
(Illinois Common-Law False Light)

114. Plaintiffs Guzman and Rao re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

115. Defendant published Plaintiffs Guzman and Rao's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendant's events and activities, causing them to be placed in a false light as employees or as someone who was affiliated with or endorsed Defendant's business before the public as a result of that publication.

116. Defendant's unauthorized use of Plaintiffs Guzman and Rao's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendant; further, the manner in which Defendant used the subject image was ongoing and continuous in that any person visiting Defendant's social media account could view, access, and even download the image from the date it was first posted until present.

117. Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Plaintiffs Guzman and Rao in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

118. Defendant published Plaintiffs Guzman and Rao's image, likeness and/or identity on its social media outlets in order to create the false impression that Plaintiffs Guzman and Rao were either employees working for or endorsed Defendant's establishment. As such, Defendant's

intent in publishing Plaintiffs Guzman and Rao's image, likeness and/or identity was to mislead the public and cast them in a false light with respect to their affiliation with Defendant.

119. Defendant was at all times aware that Plaintiffs Guzman and Rao never worked for or endorsed its establishment, and never had any affiliation with Plaintiffs Guzman and Rao's events or activities.

120. Defendant never sought permission or authority to use Plaintiffs Guzman and Rao's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of its events or activities.

121. Plaintiffs Guzman and Rao never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of their image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of its events or activities.

122. Defendant was at all relevant times aware that it never received Plaintiffs Guzman and Rao's permission or consent to use their Image on any website or social media account, or on any other medium, in order to promote Defendant's business.

123.

124.

125.

126. Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Plaintiffs Guzman and Rao's image, likeness or identity without their express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint in a manner which placed Plaintiffs Guzman and Rao in a false light.

127. Due to Defendant's invasion of Plaintiffs Guzman and Rao's privacy by placing them in a false light, Plaintiffs Guzman and Rao have been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

128. In addition, Plaintiffs Guzman and Rao hereby request an Order permanently enjoining Defendant from violating Plaintiffs Guzman and Rao's right to privacy.

129. In addition, Plaintiffs Guzman and Rao hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendant's knowing and intentional violation of their common-law privacy rights.

130.

131.

**FIFTH CAUSE OF ACTION**
**(Negligence and *Respondeat Superior*)**

132. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

133. Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on Defendant's website and/or social media accounts.

134. Said failure was the proximate cause of the harm Plaintiffs suffered when their Image was published without their authorization.

135. In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

136. In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

137. Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

138. As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

139. At no point did Defendant ever seek or receive permission or consent to use any Plaintiffs' Image for any purpose.

140. Defendant was at all relevant times aware that it had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

141. At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their Images.

142. Plaintiffs have been damaged in amounts to be proved at trial and are also entitled to punitive damages based on Defendant's actions.

143.

144.

145. No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Latin Bliss's Night Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e) For such other and further relief as the Court may deem just and proper.

Dated: October 21, 2026.
Chicago, Illinois

/s/ Joseph N. Casas
Joseph N. Casas
Illinois Bar No. 6274674
California Bar No. 225800
**THE CASAS LAW FIRM, P.C.**
401 North Michigan Avenue
Suite 1200
Chicago, Illinois 60611
joseph@talentrights.law